Filed 11/3/15  Alpine Union School Dist. v. Grossmont Union High School Dist. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ALPINE UNION SCHOOL DISTRICT et al., | D067500 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. 37-2014-00034850-CU-MC-CTL) |
| GROSSMONT UNION HIGH SCHOOL DISTRICT et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of San Diego County, Joel M. Pressman, Judge.  Affirmed.

Orrick, Herrington & Sutcliffe, Warrington S. Parker III, Khai Lequang and T. Wayne Harman for Defendants and Appellants.

Williams Iagmin and Jon R. Williams for Plaintiff and Respondent Alpine Union School District.

Craig A. Sherman for Plaintiff and Respondent Alpine Taxpayers for Bond Accountability.

Defendants Grossmont Union High School District and Ralf Swenson (together Grossmont) appeal an order granting the motion of plaintiffs Alpine Union School District and Alpine Taxpayers for Bond Accountability (together Alpine) for a preliminary injunction, and the concurrent issuance of a preliminary injunction requiring Grossmont to set aside certain Proposition U bond proceeds pending resolution of Alpine's action to prevent all bond proceeds from being used for purposes other than the construction of a new high school in the Alpine area. On appeal, Grossmont contends the trial court abused its discretion by granting the motion and issuing the preliminary injunction because (1) Proposition H and Proposition U cannot reasonably be interpreted as a promise by Grossmont that bond proceeds would be used to construct a new high school in the Alpine area, (2) even were there such a promise, Grossmont has not broken that promise, (3) there is no other basis on which the injunction can be supported, (4) nonissuance of the injunction would not cause irreparable harm to Alpine and issuance of the injunction would cause harm to Grossmont, and (5) a mandatory injunction should not be issued. For the reasons discussed below, we conclude the court did not abuse its discretion by granting Alpine's motion and issuing the preliminary injunction.

FACTUAL AND PROCEDURAL BACKGROUND

In 2004, voters in the Grossmont district passed Proposition H (Prop. H), approving the sale of bonds to provide proceeds to "construct a new school." However, all Prop. H proceeds apparently were spent or allocated by Grossmont without the construction of a new high school.

2

In 2008, voters in the Grossmont district passed Proposition U (Prop. U), approving the sale of bonds to provide proceeds for "constructing a new school in Alpine/Blossom Valley." Prop. U listed specific projects that were authorized to be completed with bond proceeds, including:

> NEW HIGH SCHOOL—ALPINE/BLOSSOM VALLEY AREA
> • Complete site development including utilities and road extensions
> • After district-wide enrollment at the existing comprehensive high school sites, including the two current charter schools, equals or exceeds 23,245 (which is the official 2007-08 CBEDS enrollment) at the time of release of request for construction bids, begin and complete construction—classrooms and general use school buildings and grounds to accommodate up to 800 students, adequate academic/vocational/job-training equipment, library/multimedia facilities, computer and science labs, food service facilities, and spac[e] for student-supported services."

In 2009, Grossmont purchased a parcel of land on which to build a new high school in the Alpine area. Thereafter, it cleared the land, removed contaminated soil, obtained agency approvals to grade the land, approved contracts for development, design and construction of the new high school, and received architectural plans for the high school.

However, in 2012 Grossmont decided to postpone further work on construction of the new high school in the Alpine area. Grossmont withdrew its building and facilities plans and removed the new high school from its project list.

In 2014, the Alpine High School Citizens Committee (AHSCC) submitted to the San Diego County Office of Education (SDCOE) sufficient signatures to support a petition for the reorganization and unification of the Alpine district. SDCOE recommended approval of the unification petition and forwarded its recommendation to

the State of California Board of Education (SBE).[1]  Grossmont's board passed a

resolution opposing the unification petition.

On October 14, 2014, Alpine filed the instant action against Grossmont, alleging

causes of action for a permanent injunction and for taxpayer and school bond waste

prevention (Code Civ. Proc., § 526a; Ed. Code, § 15284).  Alpine subsequently filed a

first amended complaint, adding causes of action for declaratory relief and writ of

mandate (Code Civ. Proc., § 1085).  The trial court sustained Grossmont's demurrer to

the first amended complaint with leave to amend.[2]

On November 10, 2014, Alpine filed the instant motion for a preliminary

injunction enjoining Grossmont from: (1) "[s]pending any further school bond-funded

revenue or state matching funds on any new or future construction projects or project

approvals pending the [SBE's] final determination on school bond allocation regarding

Alpine's petition for unification as a K-12 district, or upon entry of judgment in this

action;" and (2) "[i]ncurring any further school bond indebtedness under Propositions H

and U for any new or future construction projects or project approvals pending the

[SBE's] final determination on school bond fund allocation regarding Alpine's petition for

unification as a K-12 district, or upon entry of judgment in this action."

---

[1]    The record on appeal does not contain any information regarding any action that has to date been taken by SBE on the petition.

[2]    On April 23, 2015, we granted Grossmont's request that we take judicial notice of the trial court's March 27, 2015, order sustaining its demurrer with leave to amend.

4

On January 22, 2015, following briefing and oral argument by the parties, the trial court made certain findings, granted Alpine's motion in part, and issued a preliminary injunction ordering Grossmont to set aside $14 million immediately and an additional $28 million by January 15, 2016. Grossmont timely filed a notice of appeal.[3]

DISCUSSION

I

*Preliminary Injunctions Generally*

"As its name suggests, a *preliminary* injunction is an order that is sought by a plaintiff *prior to a full adjudication of the merits of its claim*. [Citation.] To obtain a preliminary injunction, a plaintiff ordinarily is required to present evidence of the irreparable injury or interim harm that it will suffer if an injunction is not issued pending an adjudication of the merits." (*White v. Davis* (2003) 30 Cal.4th 528, 554.)

"[A]s a general matter, the question whether a preliminary injunction should be granted involves two interrelated factors: (1) the likelihood that the plaintiff will prevail on the merits, and (2) the relative balance of harms that is likely to result from the granting or denial of interim injunctive relief." (*White v. Davis*, *supra*, 30 Cal.4th at p. 554.) Alternatively stated, "trial courts should evaluate two interrelated factors when

---

[3] On March 2, 2015, we denied Grossmont's separate petition for writ of supersedeas, prohibition and/or request for stay challenging the trial court's order and preliminary injunction. We granted its request for calendar preference and expedition of the appeal. On June 24, Grossmont filed a request for judicial notice of Alpine's second amended complaint and the trial court's June 9 order overruling Grossmont's demurrer thereto. We have considered that request with this appeal and now grant that request.

deciding whether or not to issue a preliminary injunction.  The first is the likelihood that the plaintiff will prevail on the merits at trial.  The second is the interim harm that the plaintiff is likely to sustain if the injunction were denied compared to the harm that the defendant is likely to suffer if the preliminary injunction were issued."  (*IT Corp. v. County of Imperial* (1983) 35 Cal.3d 63, 69-70.)  "The ultimate goal of any test to be used in deciding whether a preliminary injunction should issue is to minimize the harm which an erroneous interim decision may cause."  (*Id.* at p. 73.)

"The trial court's determination must be guided by a 'mix' of the potential merit and interim-harm factors; the greater the plaintiff's showing on one, the less must be shown on the other to support an injunction.  [Citation.] . . .  A trial court may not grant a preliminary injunction, regardless of the balance of interim harm, unless there is some possibility that the plaintiff would ultimately prevail on the merits of the claim."  (*Butt v. State of California* (1992) 4 Cal.4th 668, 678 (*Butt*).)

II

*Standard of Review*

On appeal from an order granting a preliminary injunction, we generally apply the abuse of discretion standard of review.  (*Butt*, *supra*, 4 Cal.4th at p. 678; *Kennedy, Cabot & Co. v. National Assn. of Securities Dealers, Inc.* (1996) 41 Cal.App.4th 1167, 1174.)  "The party challenging an order granting or denying a preliminary injunction has the burden of making a clear showing of an abuse of discretion.  [Citation.]  An abuse of discretion will be found only where the trial court's decision exceeds the bounds of reason or contravenes the uncontradicted evidence."  (*Tahoe Keys Property Owners'*

*Assn. v. State Water Resources Control Bd.* (1994) 23 Cal.App.4th 1459, 1470.)  In reviewing the grant or denial of a preliminary injunction, the applicable abuse of discretion standard "acknowledges that the propriety of preliminary relief turns upon difficult estimates and predictions from a record which is necessarily truncated and incomplete. . . .  The evidence on which the trial court was forced to act may thus be significantly different from that which would be available after a trial on the merits." (*Butt,* at p. 678, fn. 8.)

"Whether the trial court granted or denied a preliminary injunction, the appellate court does not resolve conflicts in the evidence, reweigh the evidence, or assess the credibility of witnesses."  (*Whyte v. Schlage Lock Co.* (2002) 101 Cal.App.4th 1443, 1450.)  "[T]he trial court is the judge of the credibility of the affidavits filed in support of the application for preliminary injunction and it is that court's province to resolve conflicts."  (*Monogram Industries, Inc. v. Sar Industries, Inc.* (1976) 64 Cal.App.3d 692, 704.)  "[I]f the evidence on the application is in conflict, we must interpret the facts in the light most favorable to the prevailing party and indulge in all reasonable inferences in support of the trial court's order."  (*Hilb, Rogal & Hamilton Ins. Services v. Robb* (1995) 33 Cal.App.4th 1812, 1820.)  We review the trial court's findings on disputed issues of fact for substantial evidence to support those findings.  (*Huong Que, Inc. v. Luu* (2007) 150 Cal.App.4th 400, 409.)

However, to the extent a trial court's grant or denial of a preliminary injunction and its assessment of the likelihood of success on the merits depend on legal rather than factual questions (i.e., questions of law), we review that determination de novo or

independently.  (*Huong Que, Inc. v. Luu*, *supra*, 150 Cal.App.4th at p. 408; *O'Connell v. Superior Court* (2006) 141 Cal.App.4th 1452, 1463.)

III

*Trial Court's Order Granting Preliminary Injunction*

Grossmont contends the trial court erred by granting Alpine's motion for, and issuing, a preliminary injunction because Prop. H and Prop. U did not include a promise it would construct a new high school in the Alpine area, no promise was broken, and no other basis exists for a preliminary injunction.  It also asserts the court abused its discretion by balancing the relative hardships and finding a preliminary injunction was required to maintain the status quo and prevent irreparable harm to Alpine.

A

In its order granting Alpine's motion for a preliminary injunction, the trial court stated in part:

> "In two separate bond measures passed by the voters in East County, Grossmont promised to construct a new high school in Alpine.  First, in March 2004, voters passed [Prop.] H, a $274 million bond measure to renovate and expand existing facilities and to construct 'a new high school.'  [Citation.]  It is undisputed that all Prop. H bond funds have been spent or allocated to date and that no high school was built in Alpine.  [Citations.]

> "In 2008, the voters approved [Prop.] U, wherein Grossmont again promised the voters a high school in even more specific language: 'A new school in Alpine/Blossom Valley.'  [Citation.]  [Prop.] U contained an enrollment trigger: district enrollment needed to reach a threshold of 23,245 students for construction.  (The Court recognizes a dispute as to whether this trigger has been satisfied.)  While Grossmont has purchased the land for the school at no small cost, the high school remains unbuilt.  [Citations.]

8

"Grossmont has purchased the land for the building of the high school, which belies allegations that Grossmont never intended to construct the school. Further, Grossmont has set forth reasons for delaying the construction of the Alpine school. Further, there may be valid enrollment concerns and other economic reasons to justify delaying construction from the perspective [of] Grossmont.

"However, a high school has been promised to voters *at some point* and there is an expectation that funds from [Prop.] U would be used to finance construction. This would be true regardless of what entity —Alpine or Grossmont—ultimately is responsible for the completion of the [high school]. Contrary to Grossmont's argument on December 5th, voters did not appear to vote for 'board discretion.' Voters voted for a bond (twice) that would include a new high school. [¶] . . . [¶]

"What is clear to the Court is that Grossmont represented to voters that a high school would be constructed at some point from proceeds from [Prop.] U. . . . The voters approved the bond with this understanding. . . . [T]here was an expectation and understanding that a portion of the bond funds would be used for the purpose of high school construction. Thus, whether or not unification [of Alpine] is successful, funds from this bond are supposed to be used in part to build a high school. . . . [T]he community expected, based upon the representations of Grossmont . . . , that bond funds would be used for construction. Funds should be preserved for this purpose."

The court also expressly balanced the relative harms the parties would potentially suffer were it to grant or deny a preliminary injunction, stating:

"Alpine does not intend to interfere with on-going projects with [Grossmont]. Hindering future development in [Grossmont] until the unification process is complete could take years and could be detrimental to Grossmont and the community it serves. The Court has carefully considered the Declaration of Scott Patterson in this regard. However, given the promises made by Grossmont for the construction of a [high school], the Court has determined that setting aside some of the proceeds for the development of the high school is appropriate."

9

Accordingly, the court found the evidence supported a preliminary injunction requiring Grossmont to set aside some bond proceeds for the eventual construction of a new high school in the Alpine area. The court granted the motion and issued the preliminary injunction requiring Grossmont to set aside $14 million immediately and an additional $28 million by January 15, 2016.

B

Grossmont primarily argues the trial court erred by granting Alpine's motion and issuing the preliminary injunction because neither Prop. H nor Prop. U contained, as a matter of law, a promise that it would construct a new high school in the Alpine area. Although the record does not show the trial court adjudicated the merits of Alpine's action by granting its motion for a preliminary injunction, the record supports an inference the court found that Grossmont had an obligation, as a matter of law, under Prop. H and Prop. U to construct a new high school in the Alpine area, which obligation was subject to an enrollment condition. For purposes of deciding Alpine's motion, the court found that under Prop. H and Prop. U, Grossmont promised to construct a new high school in the Alpine area if certain prerequisites were satisfied. Nevertheless, we believe the court's determination did not decide that issue on the merits. Therefore, that issue will be subject to the presentation of additional evidence and argument at trial, after which the court may then make a definitive determination of all of the legal and factual issues in this action. (See *Butt*, *supra*, 4 Cal.4th at p. 678, fn. 8.)

The parties apparently disagree whether the question of Grossmont's alleged promise to construct a new high school is solely a question of law or a mixed question of

10

law and fact. However, for purposes of deciding this appeal, we need not resolve that dispute because under either approach we conclude the trial court properly found Grossmont promised to construct a new high school in the Alpine area.

Assuming arguendo, as Grossmont argues, the trial court decided solely a question of law whether it promised to construct a new high school in the Alpine area, we conclude the court correctly decided that issue. Prop. H stated its bond proceeds would be used to "construct a new school." Prop. U was even more specific, stating its bond proceeds would be used for "constructing a new school in Alpine/Blossom Valley." Regarding the construction of the new Alpine area high school, Prop. U described the enrollment level required to be met before construction would proceed and the type of facility that would be built, stating:

> "NEW HIGH SCHOOL—ALPINE/BLOSSOM VALLEY AREA
> • Complete site development including utilities and road extensions
> • After district-wide enrollment at the existing comprehensive high school sites, including the two current charter schools, equals or exceeds 23,245 (which is the official 2007-08 CBEDS enrollment) at the time of release of request for construction bids, *begin and complete construction*—classrooms and general use school buildings and grounds to accommodate up to 800 students, adequate academic/vocational/job-training equipment, library/multimedia facilities, computer and science labs, food service facilities, and spac[e] for student-supported services." (Italics added.)

Independently construing the language of Prop. H and Prop. U, we conclude those propositions contain a promise by Grossmont to construct a new high school in the Alpine area. Contrary to Grossmont's argument, those propositions did not leave the decision as to which projects would be funded (e.g., a new high school in the Alpine area) solely to the discretion of Grossmont's board. Disregarding the extrinsic evidence

11

submitted by Alpine (e.g., declarations of voters regarding their subjective beliefs, statements by Grossmont officials, ballot measure arguments, and a grand jury report), which Grossmont argues is not relevant to the interpretation of Prop. H and Prop. U, the unambiguous language of those propositions nevertheless does not support its proffered interpretation of Prop. H and Prop. U. Although Prop. H's language arguably is insufficiently specific regarding the construction of a new high school in the Alpine area (i.e., "construct a new school"), the language of Prop. U, as quoted above, is very specific regarding the location of, and the actions to be taken to construct, a new high school. Prop. U stated Grossmont would "begin and complete construction" of the new high school in the Alpine area.

Grossmont argues a new high school was not promised by Prop. U, citing its language that "inclusion of a project on the Bond Project List is not a guarantee that the project will be funded or completed." However, we disagree that a caveat regarding the lack of a guarantee a listed project will be funded or completed necessarily precludes, as Grossmont argues, a promise that a new high school in the Alpine area will be constructed if sufficient bond proceeds are received.

Grossmont also cites Prop. U's language stating that the listed projects "will be completed as needed at a particular school site according to Board-established priorities, and the order in which such projects appear on the Bond Project List is not an indication of priority for funding or completion." Contrary to Grossmont's argument, we do not believe that language gives its board unfettered discretion to ignore its promise to construct a new high school in the Alpine area. The trial court correctly rejected

12

Grossmont's argument that Prop. U voters voted for board discretion regarding the construction of a new high school in the Alpine area.

If, on the other hand, the trial court decided the question of Grossmont's alleged promise as a mixed question of law and fact (as Alpine implicitly, if not expressly, argues), we conclude there is substantial evidence to support its finding Grossmont promised to construct a new high school in the Alpine area. In addition to the language of Prop. H and Prop. U discussed above, there is other evidence supporting the court's finding. In support of its motion, Alpine presented evidence showing that in 2009 (the year after Prop. U was passed), Grossmont purchased a parcel of land on which to build a new high school in the Alpine area. Alpine also presented evidence showing Grossmont cleared the land, removed contaminated soil, obtained agency approvals to grade the land, approved contracts for development, design and construction of the new high school, and received architectural plans for the high school. Furthermore, the court cited Alpine's evidence showing Grossmont informed bond investors that the bond proceeds would be used to construct the high school. Based on that evidence, the trial court could reasonably find that under Prop. H and Prop. U Grossmont promised to construct a new high school in the Alpine area. Not only did the language of those propositions include such a promise, but Grossmont's actions thereafter supported the court's finding that

13

Grossmont itself interpreted the propositions as obligating it to construct a new high school in the Alpine area.[4]

We conclude the trial court did not err by finding Prop. H and Prop. U contain a promise by Grossmont to construct a new high school in the Alpine area. None of the cases cited by Grossmont are apposite to this case and it does not persuade us to conclude otherwise.

C

Grossmont asserts that, even if Prop. H and Prop. U contained a promise that it would construct a new high school in the Alpine area, it did not break that promise and therefore no preliminary injunction should have been issued. Grossmont argues that because neither Prop. H nor Prop. U contained any time frame for construction of the new high school, it could not have broken any promise to construct the school, especially at the time the preliminary injunction was issued (i.e., Jan. 22, 2015). However, the absence of a specific date by which a new high school must be constructed did not preclude the trial court from inferring Prop. U implicitly included a reasonable time frame for construction of that new high school. Furthermore, based on Alpine's evidence showing Grossmont was rapidly spending bond proceeds on projects other than a new

_____

[4]     To the extent Grossmont cites *Associated Students of North Peralta Community College v. Board of Trustees* (1979) 92 Cal.App.3d 672 as authority precluding a court from considering actions taken after passage of a proposition in interpreting its meaning, we disagree that evidence on such subsequent actions is irrelevant if the proposition's language is ambiguous. In this case, the trial court could consider extrinsic evidence on Grossmont's postproposition actions to ascertain whether Prop. U is ambiguous and, if so, to ascertain the meaning of Prop. U's language.

14

high school, the court could determine that Grossmont had not shown an intent to complete construction of the high school at any time in the reasonable future. In fact, in 2012 Grossmont decided to postpone further work on construction of the new high school in the Alpine area. Grossmont withdrew its building and facilities plans and removed the new high school from its project list. There is substantial evidence to support the trial court's implied finding that Grossmont had either broken its promise, or was unlikely to fulfill its promise, to construct a new high school in the Alpine area within a reasonable time frame using Prop. U bond proceeds.[5]

IV

*Trial Court's Balancing of the Relative Harms*

Grossmont also contends the trial court erred by granting Alpine's motion for, and issuing, a preliminary injunction because it abused its discretion by finding the relative balance of the harms favored issuance of a preliminary injunction. We disagree.

When deciding a motion for a preliminary injunction, a trial court must consider the relative balance of harms likely to result from the granting or denial of an interim injunction. (*White v. Davis*, *supra*, 30 Cal.4th at p. 554.) The court should evaluate the interim harm the plaintiff is likely to sustain were the preliminary injunction denied

---

[5] Because we conclude the trial court properly found it is reasonably probable Alpine will prevail on the merits of its action based on Grossmont's alleged breach of its promise to construct a new high school in the Alpine area, we need not address Grossmont's alternative argument that there are no other bases on which to issue a preliminary injunction.

compared to the harm the defendant is likely to suffer were the injunction issued. (*IT Corp. v. County of Imperial*, *supra*, 35 Cal.3d at pp. 69-70.)

In this case, the trial court initially considered the harm Alpine likely would sustain were a preliminary injunction not issued. The court found Alpine had presented evidence that there was a danger bond funds would be inadequate to support the construction of a new high school based on Grossmont's planning. Alpine's evidence showed a new high school would cost about $70 million, less the amount already spent on land. As of June 30, 2014, Grossmont's construction fund had about $104 million in cash and other assets. Grossmont was spending those funds at a rate of about $2 million to $11 million per month, thereby threatening to exhaust its entire construction fund by 2017. Also, in 2012 Grossmont had "deprioritized" construction of a new high school in the Alpine area, essentially placing it near the bottom of the list of projects to be funded. Based on that evidence, the court found there were "legitimate concerns that Grossmont may be equivocating on its commitment to build a high school or that funding for the high school will ultimately not be available."[6]

The trial court also considered the harm Grossmont likely would sustain were a preliminary injunction issued. The court considered Grossmont's need to continue spending bond proceeds on other projects, especially during a potentially prolonged

---

[6]   Grossmont's argument that it nevertheless has additional bonding capacity to raise funds to construct a new high school does not, even if correct, persuade us the trial court erred in evaluating the harm Alpine likely would sustain were a preliminary injunction not issued.

16

period that a decision on Alpine's unification application might take. It also noted Alpine did not intend to interfere with Grossmont's ongoing construction projects.

However, given Grossmont's promise to construct a new high school in the Alpine area and its current rate of spending of Prop. U bond proceeds on other projects, the trial court found the balance of harms weighed in favor of granting Alpine's motion for a preliminary injunction. In effect, the court found Alpine would suffer a greater harm were a preliminary injunction not issued requiring Grossmont to set aside some of the Prop. U bond proceeds for construction of a new high school in the Alpine area. Accordingly, the court issued a preliminary injunction ordering Grossmont to immediately set aside $14 million and set aside an additional $28 million by January 15, 2016.

Contrary to Grossmont's argument, the fact that there are other projects listed in Prop. U that may not be funded because of the preliminary injunction does not show the trial court abused its discretion by finding the balance of relative harms favored maintaining the status quo until the trial on the merits in this matter. Rather, the court properly chose to maintain the status quo and preserve sufficient Prop. U bond proceeds to construct a new high school should Alpine ultimately prevail at trial (apparently set for Dec. 2015). The court reasonably found any interim delay in starting or funding other Prop. U projects was not sufficient to outweigh the relative harm of not preserving sufficient funds to construct a new high school in the Alpine area. The court could also have reasonably found incredible, or at least greatly exaggerated, Grossmont's argument that it would have to lay off staff members and terminate the services of hundreds of local

17

contractors and other workers were the preliminary injunction issued. We conclude the trial court did not abuse its discretion by finding the balance of relative harms favored the issuance of a preliminary injunction.

V

*Mandatory Injunction*

Grossmont finally contends the trial court erred by granting Alpine's motion for, and issuing, a preliminary injunction because that injunction was a mandatory injunction, which should only be issued in extreme cases and this is not an extreme case. Assuming arguendo the preliminary injunction is a mandatory injunction for which a higher standard for its issuance applies, Grossmont does not cite any case showing, or otherwise persuade us, the trial court abused its discretion by issuing a mandatory preliminary injunction in the circumstances of this case to preserve the status quo until the trial on the merits.

DISPOSITION

The order is affirmed. Alpine is entitled to costs on appeal.

McDONALD, J.

WE CONCUR:

BENKE, Acting P. J.

NARES, J.

18